UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


LEIDY ALMEIDA GUARNIZO,

     Petitioner,

v.                                              Case No: 6:26-cv-624-JSS-RMN

LOUIS A. QUINONES, JR., KRISTI
NOEM, and GARRET RIPA,

     Respondents.

_____/

## **ORDER**

Petitioner, Leidy Almeida Guarnizo, is a citizen of Colombia, "who was admitted into the United States . . . on May 21, 2021, as a nonimmigrant B2 Temporary Visitor." (Dkt. 9 at 1; *see* Dkt. 1 ¶¶ 5, 17.) "On March 19, 2026, Petitioner was arrested in Orlando, Florida, allegedly for being undocumented." (Dkt. 1 ¶ 10; *see* Dkt. 9 at 1 ("On March 19, 2026, border patrol agents encountered and detained Petitioner because she does not have lawful immigration status to remain in the United States.").)

According to the Department of Homeland Security (DHS), Border Patrol agents stopped Petitioner's vehicle to "establish [her] citizenship and immigration status." (*See* Dkt. 9-2 at 3–4.) During the stop, Petitioner purportedly "stated [that] she is a citizen of Colombia and did not have any immigration documents to allow her to be in, pass through, or remain in the United States legally." (*Id.* at 4.) Accordingly,

the agents arrested Petitioner and took her to an Immigration and Customs Enforcement (ICE) detention center. (*See* Dkt. 9-2 at 1, 3–4 (stating that Border Patrol agents arrested Petitioner at 9:30 AM EST on March 19, 2026).) Several hours later, Respondents obtained an arrest warrant and issued Petitioner a notice to appear. (*See* Dkt. 22 at 12 (acknowledging that Petitioner was arrested without a warrant and detained for several hours before the warrant was obtained); *see also* Dkt. 9-1 at 1, 3 (showing that Petitioner was issued a Notice to Appear on March 19, 2026); Dkt. 9-3 (showing that the I-200 warrant for Petitioner's arrest was issued at 12:11 PM EST on March 19, 2026).)

Petitioner initiated this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1.) Petitioner maintained that 8 U.S.C. § 1226—not 8 U.S.C. § 1225—applied to her detention, but that Respondents had not complied with the statute's requirements, thereby violating her constitutional rights under the Fifth and Fourteenth Amendments. (*See id.* at 3–4.) She further argued that Respondents violated her rights under the Fourth Amendment when they arrested her without a warrant, despite lacking statutory authority to perform such an arrest. (*See id.* at 3; Dkt. 11 at 2.) In response, Respondents argued that Petitioner was properly detained under section 1226. (*See* Dkts. 9, 20.) The court held an evidentiary hearing on April 9, 2026, during which Petitioner testified in support of her petition.

"The Fifth Amendment, as well as the Fourteenth Amendment, protects every [noncitizen within the jurisdiction of the United States] from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77

(1976); *see Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever [her] status under the immigration laws, [a noncitizen] is surely a 'person' in any ordinary sense of that term. [Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Hincapie v. U.S. Att'y Gen*, 604 F. App'x 882, 884 (11th Cir. 2015) ("The Fifth Amendment right to due process applies to non[]citizens in removal proceedings." (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Rodriguez v. Quinones, Jr.*, No. 6:26-CV-187-PGB-DCI, 2026 WL 194218, at *2 (M.D. Fla. Jan. 26, 2026) ("Noncitizens present in the United States are entitled to due process under the Fifth Amendment[, . . . including] protection against deprivations of liberty, such as immigration detention, without due process of law." (quotation omitted)). Accordingly, "[l]imitations like the Due Process Clause . . . restrict the [g]overnment's power to detain noncitizens," and "[c]ourts must review immigration procedures and ensure that they comport with the Constitution." *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1334 (M.D. Ga. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

"The Immigration and Nationality Act (INA) establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the [g]overnment to use when removing certain noncitizens from the United States and, in some cases, detaining them."); *see also Rojas v. U.S. Att'y Gen*, No. 22-13372, 2023 WL 7276652, at *1 (11th

- 3 -

Cir. Nov. 3, 2023) ("Removal proceedings before an [i]mmigration [j]udge," as outlined in the INA, "are the exclusive means of determining [a noncitizen's] removability"). The INA establishes two procedures for removing noncitizens from the country. *Urra Dorta v. Mordant*, No. 2:26-CV-217-SPC-DNF, 2026 WL 452407, at *1 (M.D. Fla. Feb. 18, 2026).

To begin, there are expedited removal proceedings, in which immigration officers may remove a noncitizen from the United States "without further hearing or review." 8 U.S.C. § 1225(b)(1). "Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability." *Urra Dorta*, 2026 WL 452407, at *1. Under the Act, a noncitizen may be subject to expedited removal if she (1) "is inadmissible because [she] . . . lacks a valid entry document," (2) "has not been physically present in the United States continuously for the [two]-year period immediately prior to the date of the determination of inadmissibility," and (3) "is among those whom the Secretary of Homeland Security has designated for expedited removal." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). Respondents do not contend that Petitioner is detained under section 1225. (*See* Dkt. 9 at 1 ("Petitioner is being held under 8 U.S.C. § 1226(a).").) Indeed, Respondents concede that Petitioner is not eligible for expedited removal under that section. (*See id.* at 2–3 ("Petitioner does not meet the statutory definition for an applicant for admission under 8 U.S.C. § 1225(a)(1) as the Petitioner was admitted into the United States . . . when Petitioner last entered the United States.").) The court agrees that section 1225 does not govern this case, as Petitioner has

purportedly lived in this country for nearly five years and was arrested while physically present in the United States.  (Dkt. 9 at 1; *see* Dkt. 9-1 at 1; Dkt. 9-2 at 3–4.)  *Jennings v. Rodriguez*, U.S. 281, 288 (2018) (explaining that section 1225(b) "applies primarily" to noncitizens "seeking entry into the United States," while section 1226 applies to noncitizens who are "already present in the United States"); *see Johnson*, 594 U.S. at 543 (differentiating between sections 1225 and 1226, and noting that each section represents a "sequential step[] of the removal process," as section 1225 "provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing," while section 1226 "authorizes the arrest and detention of [noncitizens] pending a decision on whether they are to be removed"); *see also Claros v. Louis A. Quinones, Jr.*, No. 6:26-CV-208-JSS-LHP, 2026 WL 251807, at *3 (M.D. Fla. Jan. 30, 2026) (collecting cases to show that most courts to have considered the question have concluded that a noncitizen who is arrested while present in the United States is not subject to expedited removal and mandatory detention under section 1225, but is instead entitled process set forth in section 1226, which includes a bond hearing).

That leaves the "ordinary course," in which DHS may begin removal proceedings against a noncitizen who "is living in the United States without authorization" under section 240 of the INA through a notice to appear.  *Johnson*, 594 U.S. at 527 (citing 8 U.S.C. § 1229a); *see Arizona v. United States*, 567 U.S. 387, 407 (2012) ("When [a noncitizen] is suspected of being removable, a federal official issues an administrative document called a [n]otice to [a]ppear.").  Indeed, federal

- 5 -

regulations require that a noncitizen who is placed in section 240 removal proceedings receive written notice of the proceedings via a notice to appear. *See* 8 U.S.C. § 1229(a)(1) ("In removal proceedings under section [240], written notice (in this section referred to as a 'notice to appear') *shall* be given in person to the [noncitizen]." (emphasis added)); *Dragomirescu v. U.S. Att'y Gen.*, 44 F.4th 1351, 1354 (11th Cir. 2022) (observing that a notice to appear must be provided "in every removal case"). The notice acts as "a charging document" that "informs the [noncitizen] of the specific charges against [her] and outlines their legal and factual basis." *Dragomirescu*, 44 F.4th at 1354; *see Jimenez-Perez v. U.S. Att'y Gen*, 817 Fed. App'x 676, 680 (11th Cir. 2020) ("An immigration court is vested with jurisdiction to conduct removal proceedings upon the filing of a charging document. [A notice to appear] is a charging document." (citation omitted)).

"The INA further provides that DHS may arrest and detain" noncitizens who are placed in section 240 deportation proceedings "pending a decision on whether [they are] to be removed from the United States." *Johnson*, 594 U.S. at 527 (citing 8 U.S.C. § 1226); *see Arizona*, 567 U.S. at 407 ("The federal statutory structure instructs when it is appropriate to arrest [a noncitizen] during the removal process."). According to federal regulations, DHS may issue a warrant for the noncitizen's arrest "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, . . . *under the authority of Form I–200, Warrant of Arrest.*" 8 C.F.R. § 1236.1 (emphasis added); *see* 8 U.S.C. § 1226 ("On a warrant issued by the [a]ttorney [g]eneral, [a noncitizen] may be arrested and detained

*pending a decision on whether the [noncitizen] is to be removed* from the United States." (emphasis added)).

Generally, the warrant must be issued before the noncitizen's arrest. *See* 8 U.S.C. § 1226(a) ("*On a warrant issued by the Attorney General, [a non-citizen] may be arrested and detained* pending a decision on whether the [noncitizen] is to be removed from the United States." (emphasis added)); *see Jennings*, 583 U.S. at 302 (Section 1226(a) "authorizes detention *only [o]n a warrant* issued by the Attorney General *leading to the [noncitizen's] arrest*." (quoting 8 U.S.C. § 1226(a)); *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023) (explaining that section 1226 "is not even triggered unless an arrest warrant is issued," and "the subsequent provisions giving the Attorney General discretion to detain or release the arrested [noncitizen] are likewise not triggered" unless the noncitizen has "been arrested on a warrant"); *Creedle v. Miami-Dade Cnty.*, 349 F. Supp. 3d 1276, 1296 (S.D. Fla. 2018) (explaining that under section 1226, a noncitizen "may be arrested and detained by ICE while awaiting a removal decision, but the arrest must be pursuant to a warrant issued by [ICE]."). Without a warrant, federal immigration officers "have more limited authority" to arrest a noncitizen. *Arizona v. United States*, 567 U.S. 387, 408 (2012). In such circumstances, federal immigration officers "may arrest a non-citizen for being in the United States in violation of any immigration law or regulation . . . *only where the [non-citizen] is likely to escape* before a warrant can be obtained." *Id.* (alterations adopted and emphasis added) (quoting 8 U.S.C. § 1357(a)(2)). To conduct a warrantless arrest,

federal immigration officers must therefore have an individualized suspicion that the noncitizen to be arrested poses a flight risk. *See* 8 U.S.C. § 1357(a)(2) (empowering federal immigration officials to arrest a noncitizen without a warrant if they "ha[ve] *reason to believe that the [noncitizen] so arrested* is in the United States in violation of [federal immigration] law . . . and is likely to escape before a warrant can be obtained for [their] arrest" (emphasis added)); *accord* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has *reason to believe that the person* is likely to escape before a warrant can be obtained." (emphasis added)); *see also Creedle*, 349 F. Supp. 3d at 1296 (explaining that section 1357(a)(2) provides an exception to section 1226's warrant requirement, but that this provision "*allows for a warrantless arrest only if ICE has reason to believe that the suspected removable individual* is likely to escape before a warrant can be obtained for [her] arrest" (emphasis added and quotations omitted)).

Petitioner must be released for two reasons. First, Respondents arrested her before issuing a notice to appear. (*See* Dkt. 9-1 at 1, 3; Dkt. 9-2 at 1, 3–4.) Accordingly, Respondents lacked statutory authority to conduct the arrest under section 1226, as removal proceedings were not yet pending. *See* 8 U.S.C. § 1226; 8 C.F.R. § 1236.1; *see also Landaverde Ardon v. Mina*, No. 6:26-CV-313-JSS-LHP, 2026 WL 530199, at *3 (M.D. Fla. Feb. 26, 2026) ("Because Respondents arrested Petitioner nearly two weeks before issuing his notice to appear, they lacked statutory authority to arrest Petitioner, as removal proceedings were not pending against him at that time."); *Arango v. Genalo*,

No. 25-CV-6720 (RER), 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) (determining that the petitioner's due process rights were violated because she "was not served with a [notice to appear until] after her arrest," in contravention of section 1236.1); *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (concluding that the government lacked authority to arrest a noncitizen pending a decision on whether he was to be removed from the country because the warrant issued three days before the notice to appear); *Castanon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 853–54 (N.D. Ill. 2025) (holding that the government "lacked statutory and regulatory authority to . . . issu[e] I-200 warrants," to noncitizens "without the concurrent or prior issuance of an [notice to appear]," thus rendering the class members' I-200 warrants invalid).

Second, Respondents did not determine whether Petitioner posed a flight risk before conducting the warrantless arrest. (*See* Dkt. 22 at 12–13; *see also* Dkt. 9-2 at 1, 3–4; Dkt. 9-3.) Although Respondents argue that they feared that Petitioner would escape if they attempted to obtain a warrant, (Dkt. 20 at 3), Respondents have not offered any evidence to suggest that they indeed considered whether Petitioner was likely to flee, (Dkt. 22 at 12–13). Further, during the traffic stop, Petitioner provided the Border Patrol agents with paperwork demonstrating that she had a pending asylum claim, a Florida driver's license, a social security card, and a work permit. (Dkt. 22 at 15–16.) At no point during this encounter did Petitioner attempt to flee. (*Id.* at 15.) Her unrebutted testimony, along with the other evidence in the record, establishes that Petitioner was not likely a flight risk. (*See id.* at 14 (testifying that she works both as

an insurance agent and a Lyft driver); Dkt. 9-2 at 4–5 (stating that Petitioner has "two minor children" living with her and no criminal history).) *Castanon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 854 (N.D. Ill. 2025) (providing factors that may be used to determine the propriety of a warrantless arrest under section 1357, such as whether the noncitizen cooperated with Border Patrol agents and whether she has a job, a stable residence, "ties to the community," or a criminal history). In any event, Respondents introduced no evidence and, as such, failed to establish that they had reason to believe Petitioner was "likely to escape before a warrant [could] be obtained for [her] arrest." *See* 8 U.S.C. § 1357(a)(2). On these facts, a warrant was required.

It appears that Respondents may have arrested Petitioner under agency guidance requiring Border Patrol agents to detain all persons who are suspected of being "[p]resent without [a]dmission or [p]arole," under section 1225. (Dkt. 9-2 at 4–5 (explaining that the agency has "issued guidance to [Customs and Border Patrol] components . . . advising that, effective immediately, [noncitizens] who enter without inspection, or are [p]resent without [a]dmission or [p]arole, *are subject to mandatory detention* under INA 235(b)," which is codified as section 1225, "and may not be released from custody except" in limited circumstances (emphasis added).) As discussed, however, section 1225 does not apply here. (*See* Dkt. 9 at 1, 2–3; Dkt. 22 at 9 ("[W]e are in agreement this is a 1226 case.").) *See Jennings*, U.S. at 288; *Claros*, 2026 WL 251807, at *3 (collecting cases). For these reasons, Respondents lacked statutory authority to arrest Petitioner under section 1357. *See* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii); *see Arizona*, 567 U.S. at 408.

Accordingly, the Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED**.

Respondents are **DIRECTED** to immediately release Petitioner.  The Clerk is directed

to close this case and terminate any pending motions as moot.

      **ORDERED** in Orlando, Florida, on April 13, 2026.

                JULIE S. SNEED
              UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Office of the United States Attorney
400 W. Washington Street
Suite 3100
Orlando, Florida 32801

Markwayne Mullin, Secretary,
Office of the General Counsel,
United States Department of Homeland Security
2707 Martin Luther King, Jr. Ave, SE
Washington, D.C., 20528

Garrett Ripa, Miami Field Office Director,
United States Immigration and Customs Enforcement
865 SW 78th Avenue
Suite 101
Plantation, Florida 33324

USAFLM.Orlando2241@usdoj.gov